# United States Bankruptcy Court
# District of Massachusetts

| | |
|---|---|
| In re:<br><br>    MILLIVISION, INC.,<br><br>                  Debtor. | Chapter 7<br>Case No. 03-47109-HJB |
| DAVID W. OSTRANDER,<br>    Chapter 11 Trustee,<br><br>                  Plaintiff,<br><br>v.<br><br>MICHAEL GARDNER and<br>ROY FURMAN,<br><br>                  Defendants. | Adversary Proceeding<br>No. 04-4341 |

## MEMORANDUM OF DECISION

Before this Court are (i) "Plaintiff's Motion for Summary Judgment," filed by David W. Ostrander as Chapter 7 trustee of Millivision, Inc. (respectively, the "Trustee" and the "Debtor"); (ii) "Defendants' Motion for Summary Judgment," filed by Michael Gardner and Roy Furman (individually "Gardner" or "Furman," collectively the "Defendants"); and (iii) a "Motion to Amend Complaint," filed by the Trustee. The central issues are whether the perfection of a security interest in a debtor's assets four (4) days after the commencement of an involuntary bankruptcy case may be avoided by the estate representative under 11

U.S.C. § 544(a) and/or § 549(a); and whether the filing of a financing statement at that time violates the automatic stay under 11 U.S.C. § 362(a).[1]

I.   **FACTS & TRAVEL OF THE CASE**

On December 12, 2003, an involuntary Chapter 11 bankruptcy petition was filed in this Court against the Debtor. The Order for Relief entered on January 21, 2004 and the Trustee was appointed shortly thereafter as Chapter 11 trustee. On March 30, 2005, the case was converted to Chapter 7 and the Trustee was appointed as the Chapter 7 trustee.

Immediately prior to the date of case commencement, the Debtor had been in negotiation to sell its assets to Activeworlds, Inc. ("Activeworlds"), a Delaware corporation. In the midst of those conversations, the Debtor informed the principals of Activeworlds that the Debtor would be forced to cease operations unless it obtained "cash to pay essential obligations." In the hope of still purchasing the Debtor's assets as a going concern, Gardner, a stockholder in Activeworlds, and Furman, a business partner of Gardner, agreed to make a $500,000 loan (the "Loan") to the Debtor, secured by all of its assets.

On December 10, 2003, the Debtor executed a note and security agreement granting the Defendants a blanket security interest in all of its assets, and on December 11, the sum of $500,000 was wire-transferred by the Defendants to the Debtor's account at Merrill Lynch. The involuntary petition followed on December 12. On December 16, 2003, the Defendants filed a Uniform Commercial Code ("UCC") financing statement with the appropriate office of the State of Delaware. It is uncontested that the Defendants were

---

[1] Unless otherwise stated, all statutory references are to Title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code").

not informed of Debtor's bankruptcy until January 6, 2004. It is also uncontested that, but for the intervening bankruptcy case, the Defendants would enjoy a valid, perfected security interest in the Debtor's assets to assure repayment of the Loan.

## II.   POSITIONS OF THE PARTIES

The Trustee contends that the perfection of the Defendants' security interest - by filing the UCC financing statement - constituted a "transfer" which may be avoided pursuant to §§ 549 and 544 of the Bankruptcy Code. He argues first that the perfection of Defendants' security interest was a post-petition transfer avoidable under § 549(a).[2] Although § 549(b) does set forth exceptions to that power, the Trustee maintains that the exceptions do not apply because the granting of the lien was not authorized by the Court, no value was given after the commencement of the case, and the exception expressly excludes the "securing of a debt that arose before the commencement of the case."[3]

---

[2] Section 549 provides:

> Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –
> (1) that occurs after the commencement of the case; and
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>     (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

[3] Section 549(b) provides:

> In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such a case but before the order for relief to the extent any value, including services, *but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer*, notwithstanding any notice or knowledge of the case that the transferee has.

-3-

The Trustee contends also that the Debtor's security interest can be avoided under § 544(a)[4] because, as of the date of case commencement, the Defendants' security interest was unperfected, while the Trustee enjoyed the rights and powers of a judicial lienholder and/or hypothetical bona fide purchaser of the Debtor's assets. Finally, the Trustee seeks to amend his complaint to include allegations that the Defendants violated

---

11 U.S.C. § 549(b)(emphasis supplied).

[4] Section 544(a) provides, in relevant part:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien o all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(1), (3).

-4-

the automatic stay, specifically as provided under subsections (4) and (5) of § 362(a).[5] The Trustee asserts that:

> [T]he recording of the Uniform Commercial Code Financing Statement by the Defendants on December 16, 2003, four (4) days after the filing of the involuntary petition commencing this bankruptcy case, was a violation of the automatic stay as the recording constituted an act to perfect a lien against property of the estate, pursuant to § 362(a)(4), or property of the Debtor pursuant to § 362(a)(5) of the Bankruptcy Code.

In response to the Defendants' assertion that their actions were protected by an exception to the automatic stay provided by § 362(b)(3), the Trustee maintains that the exception protects only transfers sought to be avoided under § 547.[6] Because the

---

[5] Section 362(a) states, with respect to the subsections relied upon by the Trustee:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of –
> (4) any act to create, perfect, or enforce any lien against the property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such line secures a claim that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(4), (5).

[6] Section 362(b) provides exceptions to the automatic stay and states, in relevant part:

> The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay –
> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that . . . such act is accomplished within the period provided under section 547(e)(2)(A) of this title.

11 U.S.C. § 362(b)(3).

Section 547(e)(2)(A) provides:

> For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made –
> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time,

-5-

Trustee's complaint does not include a § 547 voidable preference claim, he argues that the automatic stay exception does not apply to the perfection of the Defendants' security interest.

The Defendants argue that various sections of the Code, specifically §§ 546(b),[7] 362(b)(3), and 547(e)(2)(A), permit lienholders to perfect security interests after the filing of the petition and insulate that perfection, both from avoidance by the estate representative under §§ 549 or 544 and from liability for violation of the automatic stay under § 362(a). The Defendants claim that their security interest is not avoidable by the Trustee under either § 544(a) or § 549(a) because the Trustee's powers are limited by § 546(b), which permits the perfection of an interest in property to be effective against those with rights obtained pre-petition, if permitted by "generally applicable law."

The Defendants assert that "[t]he Federal Bankruptcy Code is a generally applicable law" that "twice provides for the relation back of the perfection of a security interest to the date of the underlying transaction" - in both § 547(e)(2)(A) and § 362(b)(3). And the Defendants, relying on In re Gaudreault, 315 B.R. 1 (Bankr. D. Mass. 2004), assert that

---

  except as provided in subsection (c)(3)(B).

11 U.S.C. § 547(e)(2)(A).

[7] The portion of § 546(b) on which the Defendants rely states:

  The rights and powers of a trustee under sections 544, 545, and 549 of this
  title are subject to any generally applicable law that –
  (A) permits perfection of an interest in property to be effective against an
  entity that acquires rights in such property before the date of perfection.

11 U.S.C. § 546(b)(1)(A).

-6-

even were the Trustee not so limited by §546(b), he could not recover under §§ 544(a) or 549(a) because the Court should find the term "commencement of the case" to mean the date of entry of the order for relief, which post-dated the date of perfection, and not the date that the involuntary petition was filed.

The Defendants also have an alternative argument. They maintain that, should this Court rule that their lien may be avoided by the Trustee, then the Court should invoke its equitable powers to impose a constructive trust in favor of the Defendants. The Defendants argue that the Loan was used by the Debtor to pay debts owed to other creditors, the Debtor was unjustly enriched, and those creditors received a "windfall" by sharing in the loan proceeds to the detriment of the Defendants. The Defendants submit that the Debtor breached a duty owed to them by failing to immediately disclose the filing of the involuntary bankruptcy petition, and that such breach warrants the imposition of a "constructive trust on the assets of the Debtor's estate to secure all or part of the Defendants' claim."

III.  **DISCUSSION**

  A.  **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (applies to adversary proceedings through Fed.

R. Bankr. P. 7056). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When confronted with cross-motions for summary judgment, the court "must resolve all genuine factual disputes in favor of the party opposing each such motion and draw all reasonable inferences derived from the facts in that party's favor." Atlantic Fish Spotters Ass'n v. Evans, 321 F.3d 220, 224 (1st Cir. 2003). The court must then "mull each motion separately, drawing inferences against each movant in turn." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).

### B. Section 546 - Limitation on the Trustee's Avoiding Powers

Before the Court turns to whether and to what extent the Defendants' lien may be avoided by the Trustee under §§ 544(a) or 549(a), it must be first satisfied that the Trustee's avoiding powers are not precluded by § 546(b). That section states, in relevant part:

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection. . .

11 U.S.C. § 546(b)(1)(A). The purpose of this limitation, as reflected in the legislative history, is to "protect, in spite of surprise intervention of a bankruptcy petition, those whom *State law* protects by allowing them to perfect their liens or interest as of an effective date that is earlier than the date of perfection." S. Rep. No. 989, 95th Cong., 2d Sess. 86-87 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess. 371-72 (1977) (emphasis supplied).

In In re Microfab, Inc., Judge Kenner parsed out the language of § 546(b) and turned the analysis into a three-part inquiry:

> First, the statute must be a "generally applicable law." Second, the law must permit the "perfection of a security interest in property." And third, the interest in property must "be effective against any entity that acquires rights in such property before the date of perfection."

105 B.R. 152, 156 (Bankr. D. Mass. 1989). Relying on legislative history, Judge Kenner noted that the first requirement - that the underlying law be of general applicability - "is a requirement that the law apply not only in bankruptcy cases but outside of bankruptcy as well." Id., (citing, *inter alia*, H.R. Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), S. Rep. No. 989, 95th Cong., 2d Sess., 86 (1978)); see also, In re 229 Main Street Ltd. P'Ship., 262 F.3d 1, 10 (1st. Cir. 2001) (same). In both Microfab and 229 Main Street, the law of general applicability at issue was Massachusetts General Laws c. 21E, § 13, which is a state statute providing a super-priority lien where hazardous or like materials are released or threatened to be released in the environment. Accordingly, in each case, the first prong of the § 546(b) analysis was easily met.

Here, the Defendants have failed to identify a non-bankruptcy law to support their contention that the Trustee's avoiding powers are limited by § 546(b). The Defendants do not have a purchase money security interest in the Debtor's assets, which would have provided them a 20-day safe harbor extension within which perfection would have been deemed retroactive. See, G.L. c. 106, § 9-317(e), *adopting* U.C.C. § 9-317(e). Nor do they present any other non-bankruptcy law applicable to these circumstances that would have the effect of rendering their security interest retroactively

-9-

perfected to the commencement of the case. Indeed, the Defendants concede that "[t]he UCC doesn't have a safe harbor provision for this particular situation." (Summ. J. Hr'g Tr. 14, May 11, 2005).

Without a remedy under non-bankruptcy law, the Defendants attempt to stretch §§ 547(c)(3)(B), 547(e)(2)(A), and 362(b)(3) into laws of general applicability.[8] In support of their position, the Defendants cite In re Healthco Int'l, Inc., 174 B.R. 174, 177 (Bankr. D. Mass. 1994). There, the bankruptcy court, in an attempt to make practical sense of the sale provisions of § 363(f)(5), turned to other sections of the Code for analogous authority. This Court finds Healthco inapposite. That case was not decided within the context of § 546(b), nor with reference to an estate representative's power to avoid an otherwise unperfected security interest. Nor did Healthco involve the interpretation of the term "generally applicable law."[9] Because the Defendants have failed to identify a *non-bankruptcy* law that would entitle the Defendants to be retroactively perfected to the time of the commencement of the Debtor's bankruptcy case, they may not take advantage of § 546(b) to limit the avoidance powers of the Trustee.[10]

### C.   Section 544(a) - The Trustee's Strong-Arm Powers

---

[8] Section 547(c)(3)(B) is limited to purchase-money security interests and would not be relevant here even if it were a law of general applicability.

[9] Furthermore, to the extent that HealthCo stands for the proposition that § 363(f)(5) permits a Chapter 7 trustee to sell an asset for less than the amount necessary to pay lien creditors in full, this Court respectfully disagrees with its holding. See In re Canonigo, 276 B.R. 257, 264-66 (Bankr. N.D. Cal. 2002)

[10] Since the three-part inquiry set forth in Microlab is a conjunctive one, the Defendants fail the test by virtue of their failure to satisfy the first prong and the other two parts need not be addressed.

Because the Defendants had yet to perfect their security interest in the Debtor's collateral, they were unperfected secured creditors at the time of commencement of the Debtor's case. As of the commencement of a bankruptcy case, the trustee has the status of a hypothetical judicial lienholder and has the power to avoid any transfer of the debtor's property that such a creditor could avoid. 11 U.S.C. § 544(a)(1).[11] Section 544(a) of the Bankruptcy Code provides, in relevant part:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists.

Armed with the rights of a judgment lien creditor, the trustee has priority over an unperfected security interest.[12] See also, G.L. c. 106, § 9-317(a).[13]

---

[11] Trustee argues that he has the powers of either a judicial lienholder, § 544(a)(1), or of a bona fide purchaser of real property, § 544(a)(3); Debtor does not list any real property on Schedule A of his bankruptcy petition, nor is any referenced as collateral in the security agreement between Debtor and Defendants. Accordingly, the analysis is limited to one under § 544(a)(1).

[12] "The purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens, and undisclosed prepetition claims against the debtor's property as of the commencement of the case." Lawrence P. King et al., Collier on Bankruptcy ¶ 544.03 (15th ed. 2005).

[13] Massachusetts General Laws, c. 106, § 9-317(a) provides:

> A security interest or agricultural lien is subordinate to the rights of:
> (1) a person entitled to priority under Section 9-322; and
> (2) except as otherwise provided in subsection (e), *a person that becomes a lien creditor before the earlier of the time:*
> *(A) the security interest or agricultural lien is perfected;* or

The Defendants argue further. First, they claim that post-petition perfection is permissible under §362(b)(3). They contend that, pursuant to § 362(b)(3), the Code authorizes the perfection of a security interest within 10 days after the debtor has acquired rights in the property transferred. Section 362(b)(3) provides in relevant part:

> The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay —
>
> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.

Defendants read this section too expansively. Section 546(b) is inapplicable here. See supra. And § 547(e)(2) is expressly limited to use in a preference analysis. In re Planned Protective Serv., Inc., 130 B.R. 94, 97-98 (Bankr. C.D. Cal. 1991). The automatic stay exception under § 362(b)(3) functions with §§ 547(e)(2)(A) and § 546(b) to prevent valid acts under those sections from simultaneously, and irreconcilably, violating the automatic stay. Id. at 98 ("If [the § 362(b)(3)] exception were not included, the post-petition perfection permitted by § 547(e)(2)(A) and § 546(b) would be nullified") (citations omitted). Sections 362(b)(3) and 547(e) operate separately and independently from § 544(a). Neither

---

> (B) one of the conditions specified in Section 9-203(b)(3) is met and a financing statement covering the collateral is filed.

(Emphasis added). It follows that under both the Bankruptcy Code and Massachusetts law, a creditor's rights are subordinate to those of a trustee who becomes a lien creditor *prior* to the perfection of the creditor's security interest.

of those sections of the Code "override the effect of §544(a)", id., and, consequently, § 362(b)(3) is of no assistance to the Defendants.

Second, the Defendants try to persuade the Court that an involuntary case does not "commence" until the entry of the order for relief. They contend that:

> [T]he term "commencement of the case" as employed in § 544(a) is not defined in the Bankruptcy Code and that, under the circumstances of this case, the date of commencement should be deemed to be January 21, 2004, the date of entry of the order for relief.

However, it is difficult to find a more concisely phrased or clearer section of the Code than § 303(b), which states in its entirety:

> An involuntary *case* against a person is *commenced* by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title.

(Emphasis supplied). Accordingly, for the purposes of § 544(a), the date of case commencement is the date on which the petition (voluntary or involuntary) is filed.[14]

---

[14] The Defendants' reliance on In re Gaudreault, 315 B.R. 1 (Bankr. Mass. 2004) is misplaced. In Gaudreault, Judge Hillman held that under § 303(f), a debtor may claim § 522 exemptions until the order for relief is entered. 315 B.R. at 6. Gaudreault stands for the narrow proposition that a debtor to an involuntary bankruptcy petition may file exemptions during the gap period - the time between the filing of the petition and entry of the order for relief - without "run[ning] afoul of 11 U.S.C. § 522(b)(2)(A)." Id. "Because an involuntary *debtor* does not lose control over the debtor's property until the order for relief enters, that must be the point at which the extent of an exemption is decided." Id. at 4 (emphasis added). Judge Hillman based his holding, in part, on § 303(f)'s role in allowing a debtor to manage its assets during the gap period, noting that "[t]he Code permits a debtor wide latitude during the gap period." Id. At 6. The Defendants are creditors, not protected by § 303(f) and not the intended beneficiaries of Judge Hillman's equitable "recalibrating," as the Defendants call it, of the date of case commencement. The analogous section of the Code that provides creditor protection during the gap period is § 549(b). However, the "securing of a debt that arose before the commencement of the case" is expressly excepted from acts allowed under § 549(b). Accordingly, even if this Court were to follow Gaudreault, a decision not before the Court today, that case is not applicable to the case at bar. With respect to an avoidance analysis under §§ 544 or 549, there is support neither in the Code nor in the Gaudreault opinion for considering the

-13-

Third, the Defendants request, as a matter of fairness, that this Court impose a constructive trust on the estate assets for their benefit, if their security interest is to be avoided. Their search for equity is not without foundation. The Defendants' funds permitted the Debtor to continue its operations until the date of sale. They made their loan in good faith. And were it not for the untimely intervention of the involuntary petition, they would be collecting their payment today.[15] But the same unfairness can be found in the predicament of any creditor who, for whatever reason, finds its lien unperfected on the date of commencement of a debtor's case. Here, the undisputed facts do not justify the exercise of the Court's equitable powers.

Congress made its choices long ago by providing estate representatives with hypothetical judicial lien status as of the date of case commencement. See Bankruptcy Act of 1898, Sec. 70(c), amended by 11 U.S.C. § 110(c) (repealed 1978); see also, 11 U.S.C. § 544(a) (2005). It is hardly an accident that § 544(a) has been characterized as a "strong arm power." To protect unperfected secured creditors from the effect of § 544(a) would be to rewrite the Bankruptcy Code. In re Planned Protective Serv., Inc., 130 B.R. at 98

IV. CONCLUSION

For the aforementioned reasons, this Court will GRANT the Plaintiff's Motion for Summary Judgment under Count I of his complaint, thereby avoiding, under § 544(a), the

---

commencement of a case to be the date of entry of the order for relief.

[15] Indeed, the Defendants could also have avoided their present situation if they had withheld advancing funds to the Debtor until their security interest was perfected.

Defendants' claimed security interest in the Debtor's assets. Correspondingly, the Defendants' Motion for Summary Judgment will be DENIED. The Court need not reach the Plaintiff's additional claims that the Defendants' post-petition filing of UCC financing statements violated §§ 549 or 362(a). Accordingly, the Trustee's Motion to Amend Complaint will be DENIED AS MOOT.

Orders and a judgment will issue in conformity with this Memorandum of Decision.

By the Court,

DATED: 10/12/05

Henry J. Boroff
United States Bankruptcy Judge

-15-